Rice *v.* Rice.

---

LYDIA E. RICE, appellant,

*v.*

WILLIAM RICE, respondent.

**1.** A master taking testimony in a suit in chancery has no power to order a person who has appeared as a witness, but has not taken the stand, to remove her veil, so that she may be identified by a witness who is under examination.

**2.** The master, under the rule of court, can decide only on the admissibility of testimony, and a motion that a person present disclose her features is not an offer of testimony.

*Quære.* As to the legality of the rule of court authorizing the master to reject testimony.

---

This was a suit for divorce, on the ground of adultery, and the case was referred to a master in chancery to take the testimony.

The defendant in the court of chancery, who is the appellant in this appeal, did not appear personally as a party before the master, and an order had been made by the chancellor that she should appear as a witness in behalf of the respondent. In obedience to this order she was present before the master, but she was veiled, so that her features were not discernible.

A witness being called to the stand was asked, " Do you recognize any person present as the one that you have alluded to as Mrs. Lydia E. Rice ?" thereupon complainant's counsel requested that the women present should draw their veils, and this request being refused, the master was appealed to, and he directed, against the objections of her counsel, the defendant to disclose her face to the witness.

From the order thus made an appeal was taken to his Honor Vice-Chancellor Bird, who, upon argument, sustained the order of the master, and upon his advice, in the usual form, an order was made by the chancellor " that the ruling of the master in requiring the said defendant to remove her veil be and the same is hereby sustained."

The present appeal brought up for review this decretal order.

*Mr. Horatio N. Barton* and *Mr. William M. Lanning*, for the appellant.

*Mr. George W. Macpherson* and *Mr. Garret D. W. Vroom*, for the respondent.

The opinion of the court was delivered by

BEASLEY, C. J.

From the statement prefatory to this opinion, it will appear that the point to be decided on this appeal is, whether a master in chancery, who has been directed to take the depositions of witnesses, has authority to order a woman, who is present under an order to appear as a witness, to disclose her features, by removing her veil, before she has been placed on the witness-stand.

That every court of judicature, as an indispensable attribute, is possessed of the power to require that every person who is

present as a party, or who is a witness under examination, to disclose his or her face to the court, or to the jury if there be one, would not seem in any degree questionable. Without such exposure there would be no certainty who the person really was who assumed to act as party or witness. To order such persons to expose their faces to view is common usage in every court, and thus far the practice seems not to be open to any question.

But whether this judicial power can be executed over a person who has not presented himself as a party, or over one who has not assumed the office of witness, has, as yet, never been considered or decided in this state, nor does the present occasion call for its determination.

This dispensation from an examination of this subject arises from the fact that the master in chancery is not a court in any sense of the term.

Prior to the year 1883 the entire function of the officer in question was, in all respects, ministerial. He was empowered to swear the witnesses brought before him by the respective parties; to write down the questions put to the witnesses and to record their answers, noting in his minutes such objections as were taken to any part of the testimony. The record thus made was deposited in the office of the clerk in chancery, to be passed upon, at the hearing, by the chancellor, and ultimately, as the case might be, by this court on appeal. This was the entire scope of the master's authority.

In the year just referred to, that is, in the year 1883, his Honor Chancellor Runyon promulgated a rule of court making it the duty of the examiner before whom, in its own language, " testimony is taken, to decide upon all objections to evidence, and his decision shall be final unless reversed on appeal to the chancellor, which is to be taken as hereinafter provided." The rule then proceeds to mark out the course of such appeal.

On the face of this rule it is manifest that by its form the functions of the masters in chancery are materially and quite radically changed. At least this is the obvious purpose of the new regulation; for what was before a naked ministerial office is

36

here attempted to be converted into a judicial one, *pro hac vice.*
Antecedently to the introduction of this provision the right of
decision upon the admissibility of testimony in every equitable
procedure was vested in the chancellor himself, and it may be was
thus inalienably established by the constitution of the state; but
the present case does not, of necessity, call for an investigation
of this subject, which is of much interest, that is, whether a pre-
rogative of the chancellor of this kind can in any measure be
diverted to a subordinate officer of the court, by rule of court, or
even by legislative sanction. The topic was not embraced or
alluded to in the argument, and will not be considered; but, on
the contrary, it will be assumed that the rule is operative and
confers on the masters all the power imputed by its terms.

Postulating, therefore, the power of the master to decide, in
the words of the rule, "upon all objections to evidence," it is
obvious that the question now to be passed upon is simply whether
when this witness objected to removing her veil, and when her
counsel insisted that such order could not be made, the position
then taken was an objection to evidence. Plainly it was not
such. The plaintiff, when he applied to the master to order a
removal of the veil, made no offer of any evidence, and equally
when the other side resisted the application there was no objec-
tion to evidence. It was conspicuously an endeavor on the part
of the plaintiff to obtain a discovery in aid of his testimony.
This case is fundamentally different from those illustrated in the
decisions that were cited by counsel, as, for example, the one in
which the public prosecutor in a criminal trial applied to the
court to compel the culprit to uncover his arm for the purpose
of showing to the jury certain marks upon it. The difference
between that instance and this is, that in the reported case the
marks on the arm became, by the disclosure, proofs in the cause,
whereas in the case in hand, the face unveiled would have had
no such result. The entire effect of the disclosure asked for by
the plaintiff would have been to enable his witness to obtain a
more perfect knowledge of the subject to which his testimony
related.

The master, very plainly, had no power in the premises, and, consequently, the action of the vice-chancellor on the appeal was likewise a nullity.

The decretal order is set aside, with costs in both courts.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, MAGIE, REED, VAN SYCKEL, BROWN, SMITH, WHITAKER—10.